[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a negligence action brought by the plaintiff, Mary White, against Waterbury Lodge, No. 265, Benevolent Protective Order of Elks of the United States of America, Inc. (the Elks).
 FACTS
The court makes the following findings of fact by a preponderance of CT Page 5588 the evidence. On April 4, 1998, the plaintiff, Mary White, was helping to prepare the Elks Club for a party that evening in honor of her husband who was being installed as the Exalted Ruler of the Elks. The Elks Club premises were owned, possessed, controlled and operated as a private club by the Elks. The plaintiff was there at the request of one of the officers of the Elks who had called earlier the same morning requesting help in setting up the premises because there had been a party the previous evening and he was concerned about having the premises ready for the party that night. As a matter of tradition, plaintiff was also expected to be there to help set up the tables in her roll as the spouse of the incoming Exalted Ruler.
As she was helping to set the tables, plaintiff became aware that there was nonmatching china. Plaintiff's daughter was told by an Elks member, who was also helping to set up the banquet room, to check the kitchen for matching plates. The daughter subsequently called out from the kitchen to plaintiff that she thought she had found matching plates. Plaintiff then proceeded to walk into the kitchen holding a plate to determine whether or not the plates matched. While there was a sign on the door at the entrance to the kitchen saying words to the effect of "employees only", the door was open making the sign not visible. There was no evidence presented that the plaintiff actually saw the sign and disregarded it.
As plaintiff began walking through the kitchen, there were several mats covering the kitchen floor. When plaintiff reached the end of the second mat she tripped and fell on her right side breaking her arm in three places. The fall was caused by the floor having sunk and split which resulted in a separation or fault in excess of four to six inches between lateral floor joists. Plaintiff had never been in the kitchen before and was unaware of the crack in the floor that caused her fall. This crack was covered over by a mat and the plaintiff did not see it before she fell.
Plaintiff was subsequently taken to the hospital where she was treated for her arm injuries. She followed up with Dr. Glenn Taylor, who was an orthopedist, beginning on April 7, 1998. She continued to treat with him through August of 1998. For the first two weeks after the accident she was forced to sleep sitting up and suffered great discomfort.
Plaintiff was referred by Dr. Taylor to physical therapy which she attended between May 21, 1998 and August 18, 1998. During this time period, plaintiff had to wear an immobilizer which severely restricted her ability to take care of herself. While plaintiff prided herself on being an independent person, she needed help dressing, eating and getting around while she was wearing the immobilizer. She is also a diabetic and needed her daughter to draw up the insulin and administer her daily CT Page 5589 injection.
It is abundantly clear from the documentary evidence submitted to the court that the defendant had been aware of the dangerous floor condition that led to plaintiff's injury since at least 1996. In 1997, the Elks had an engineering survey performed regarding the repairs that would be needed to make the floor even. In the same year, the Elks requested and received bids regarding such repairs. The repairs were not made despite defendant's recognition in writing that this was "an accident waiting to happen."
Defendant has also admitted in writing that the kitchen floor where plaintiff was injured had ". . . deteriorated to the point of creating a serious hazard to safety for personnel working in that area, thereby placing the Lodge in a position of negligent liability."
Dr. Taylor ultimately gave plaintiff a permanent partial disability of 5%. Plaintiff still has pain that radiates down to her wrist and fingers. Her hand cramps up after repetitive activities. She cannot garden or bowl with the intensity that she used to.[1]
Plaintiff joined a workout center in June of 1999. The fee for this membership totaled $799.00. Her medical bills included $589.00 for the hospital, $3600.14 for the orthopedist and $3,822.00 for physical therapy. The parties have stipulated that all of plaintiff's medical bills have been covered by sources acceptable under the collateral source rule and that plaintiff is only seeking economic damages for the $200 deductible and the workout center fee.
 DISCUSSION
Defendant has admitted in its answer that plaintiff was a guest who had been invited on the premises. "The distinction between one who is an invitee and one who is merely a licensee turns largely on whether the visitor has received an invitation, as opposed to permission, from the possessor of land to enter the land or remain on the land. Although an invitation itself does not establish the status of an invitee, it is essential to it. Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee but it does not make him an invitee." Kurti v. Becker, 54 Conn. App. 335, 338 (1999). Plaintiff was expressly invited by an officer of the Elks to assist the Elks in preparing the premises for the evening festivities. In addition to this express invitation, the facts also demonstrate an implied invitation. An invitation is implied when a person goes upon the land of another for their mutual benefit. Guilford v. Yale University, 128 Conn. 449, 453
(1942). Plaintiff went to the premises and performed tasks that resulted CT Page 5590 in a mutual benefit for both parties. For all these reasons, the court finds that the plaintiff was an invitee upon the premises.
"A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealing with the possessor of land. . . . General Statutes Section 52-557a, which provides that the standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee, in effect recognizes a third kind of invitee, namely, the social invitee." Kurtiv. Becker, 54 Conn. App. 335, 338 (1999). Because a social invitee is owed the same standard of care as a business invitee, it is unnecessary for the court to make a determination as to which type of invitee the plaintiff was at the time she was actually injured.
The court also finds that plaintiff has proven by a preponderance of the evidence that plaintiff remained an invitee when she walked into the kitchen. "An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out. . . . Whether an invitee exceeded the limits of the invitation depends upon whether his use of the premises went beyond that which the owner might reasonably have contemplated." Ford v. Hotel andRestaurant Employees and Bartenders Int'l Union, 155 Conn. 24, 34
(1967). An officer of the Elks specifically requested that plaintiff come to the premises to help set up for the party. This officer did not tell her to stay out of the kitchen and in fact it was reasonable to expect as part of her functions that day that she would need to go into the kitchen. Additionally, another Elk who was present at the premises at the time of the accident had expressly directed plaintiff's daughter to check the kitchen for matching china. Finally, the court finds that even if plaintiff had been aware of the "employees only" sign it would have been reasonable for her to enter the kitchen because at the time she did so she was performing the same functions as an employee would have in helping to set up the premises for the party.
Plaintiff did not exceed the limits of her invitation because her conduct of entering the kitchen did not go beyond that which the owner might reasonably have contemplated. Accordingly, her status remained that of an invitee for the entire period of time that she was on the Elks premises.
"In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e. trespasser, licensee or invitee. . . possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land CT Page 5591 must warn an invitee of dangers that the invitee could not reasonably be expected to discover. . . . (citations omitted)". Kurti v. Becker, supra at 338.
The plaintiff has proven that the defendant failed to reasonably maintain the premises in order to render them reasonably safe and failed to warn the plaintiff of dangers that she could not reasonably be expected to discover. For the plaintiff to recover from the defendant for breach of duty, she has to prove defendant "either had actual notice of the presence of the specific unsafe condition which caused [his] fall or constructive notice." White v. E F Construction Co., 151 Conn. 110, 113
(1963). The defendant had been aware of the dangerous condition in the kitchen since at least 1996 and failed to remedy the problem as it continued to become more dangerous. Additionally, the defendant actually covered up the crack with a mat thereby making it more dangerous for someone like the plaintiff who had not been warned about the condition of the floor.[2] Accordingly, the court finds that the defendant was negligent as a result of breaching the duty it owed to the plaintiff.
As a proximate cause of the defendant's negligence, the plaintiff sustained a closed fracture of the Proximal Humerus, including a fracture of the greater Tuberosity, and has incurred medical expenses for the treatment of her injuries. She has also experienced pain and suffering and a permanent partial disability.
Defendant has failed to prove by a preponderance of the evidence that plaintiff was comparatively negligent. The plaintiff was not aware of the defective condition and it was covered up in a way that plaintiff could not have observed the danger and avoided it.
 CONCLUSION
Judgement shall enter in favor of the plaintiff. The court awards economic damages to plaintiff in the amount of $8,011.24. The parties have stipulated that collateral sources have covered all of this sum with the exception of $200 which is still owed to plaintiff. The court does not award damages for the health club fee because plaintiff has failed to prove that this cost was causally related to her injury. The court awards noneconomic damages in the amount of $25,000.
CHASE T. ROGERS, SUPERIOR COURT JUDGE